977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Russell Lee WHITE, Petitioner-Appellant,
v.
Harol WHITLEY, Warden, Respondent-Appellee.
 No. 91-16723.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 15, 1992.*
Decided Oct. 20, 1992.
 
 Before CHOY, ALARCON and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Russell Lee White appeals the district court's denial of his petition for writ of habeas corpus. The district court had jurisdiction under 18 U.S.C. § 2254 and this court has jurisdiction under 18 U.S.C. § 1291. We affirm.
 
 
 3
 * First, we consider White's argument that the district court should have considered claims two through seven of his habeas corpus petition. White contends that the district court erred when it found that he had not exhausted these claims in state court. According to White, claims two through seven were fairly presented to both a Nevada district court and the Nevada Supreme Court as part of his first petition for postconviction relief. Consequently, the federal district court should have reviewed these claims rather than sending White back to state court where the procedural bar was imposed.
 
 
 4
 We agree. Review of the state court opinions makes it clear that claims two through seven in White's habeas corpus petition were considered by the Nevada courts, thereby satisfying the exhaustion requirement. Indeed, the state district court denied White's second petition for postconviction relief on the ground that the six claims of error had already been included in his first petition for postconviction relief. Despite the fact that White only raised these claims to support his argument that he had not received effective assistance of counsel, the state district court found that it had "fully considered" the six claims of error and had found them to be "without merit."
 
 
 5
 The Nevada Supreme Court came to the same conclusion when it affirmed the district court's decision denying White's first petition for postconviction relief. In finding that White was not denied effective assistance of counsel, the court considered the admission of hypnotically refreshed testimony and found that White's counsel had actually moved to have it entered in to evidence. In addition, the court indicated that it had reviewed the remaining five claims of error independently and found they "lacked merit."
 
 
 6
 Thus, it is clear that the Nevada courts reached the merits of claims two through seven of White's habeas corpus petition when they considered his first petition for post-conviction relief. Consequently, the federal district court should have reviewed these claims rather than sending White back to state court where the procedural bar was imposed.
 
 
 7
 Despite this error, we will not remand this case to the district court. In our view, this would be a waste of scarce judicial resources. Instead, we have decided to exercise our authority to consider the merits of claims two through seven of White's habeas corpus petition.[1]
 
 
 8
 In claim two, White argues that the trial court erred when it allowed testimony concerning an attorney-client conversation. The conversation at issue took place during a recess at trial. As White and his attorney were examining a grease rag that was introduced into evidence, White observed that the rag smelled like 90-weight gear oil. This statement was overheard and was used against White.
 
 
 9
 The trial court did not err when it allowed this statement to be introduced into evidence. Under Nevada law, a confidential communication is one "not intended to be disclosed to third persons." Nev.Rev.Stat. § 49.055. Because White made no effort to keep the statement confidential, the attorney-client privilege did not apply and the statement was properly admitted.
 
 
 10
 In claim three, White argues that the trial court erred in granting the state's request for an in-court identification procedure. During this process White was required to wear a hat and a cloth rag over his mouth. He contends that this was impermissibly suggestive and therefore violated his rights to due process.
 
 
 11
 A two-part inquiry is used when considering the constitutionality of an identification procedure. First, we determine whether the procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Second, if the identification procedure was impermissibly suggestive, we then determine whether it was nonetheless reliable. United States v. Givens, 767 F.2d 574, 581 (9th Cir.1985).
 
 
 12
 We do not believe the procedure used in this case was impermissibly suggestive. Moreover, because the victim had the opportunity to study White's features during the commission of the crimes in question and because the victim was able to positively identify White several times prior to trial, we are convinced that the in-court identification was reliable. As a result, we reject White's contention that the district court erred when it granted the in-court identification procedure.
 
 
 13
 In claim four, White argues that the prosecutor's questions concerning his sexual attraction to young girls were so prejudicial that the trial was rendered fundamentally unfair. However, a review of the record reveals that this questioning was in the proper scope of cross-examination. Consequently, White's argument fails.
 
 
 14
 In claim five, White contends that the trial court erred in admitting the hypnotically refreshed testimony of Debra Hadlock. Because White's counsel did not object to the introduction of this testimony at trial, there is some question as to White's ability to raise this issue on appeal. Nonetheless, we do not think that the introduction of this testimony fundamentally affected the fairness of White's trial.
 
 
 15
 In claim six, White argues that by using the phrase "prior bad acts" in a jury instruction, the trial court effectively directed a verdict of conviction. This argument is without merit. The trial court used this phrase when it instructed the jury how it was to evaluate testimony concerning White's involvement in crimes similar to the ones he was convicted of in this case. The jury had already heard the details of these crimes. The fact that the trial court referred to them as "prior bad acts" is inconsequential.
 
 
 16
 In claim seven, White challenges the admission of evidence seized pursuant to a warrantless search of his home. He argues that this search violated his Fourth Amendment rights and that as a result the fruits of the search should have been suppressed. We are not persuaded by this argument. The evidence indicates that White consented to these searches and that this consent was given voluntarily.
 
 II.
 
 17
 White argues that in addition to failing to consider claims two through seven of his habeas corpus petition, the district court also erred when it upheld the introduction of testimony concerning his prior bad acts. We find this argument unpersuasive. The testimony concerning prior bad acts was admitted to establish White's modus operandi as well as his unique "signature" in perpetrating kidnappings. Such testimony was not unfairly prejudicial to White. See Featherstone v. Estelle, 948 F.2d 1497 (9th Cir.1991) (holding that admission of testimony which denominated appellant's modus operandi in previously uncharged and charged crimes was not clearly erroneous). This is especially true given that the trial judge provided jury instructions which delineated the specific and limited purpose for which the testimony was permitted, thus reducing the potential for prejudice.
 
 III.
 
 18
 Finally, we consider White's claim that he did not receive effective assistance of counsel at trial or on appeal. White argues that his attorney, Deputy Public Defender Ken Ward ("Ward"), was deficient at trial because he failed to research the law and advise White on the admissability of hypnotically refreshed testimony. According to White, Ward was ineffective on appeal because he failed to raise five claims of error that White requested him to raise.
 
 
 19
 In order to prevail on a claim of ineffective assistance of counsel, the petitioner must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that his attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed in the Sixth Amendment. Second, the petitioner must show that the errors were so serious that they deprived him of a trial whose result is reliable. Id. at 687.
 
 
 20
 The record reveals that White's attorney moved to have the hypnotically refreshed testimony admitted into evidence. Apparently this was done in an attempt to impeach the testimony of a witness. The decision to have this testimony admitted to impeach a witness was well within the proper exercise of counsel's professional judgment and therefore does not support a claim of ineffective assistance of counsel.
 
 
 21
 White's contention that Ward failed to provide effective assistance on appeal also fails. Appellate counsel is not required to raise every claim suggested by his client, regardless of merit. See Evitts v. Lucey, 469 U.S. 387 (1985). Ward chose to limit his argument on appeal to the admission of testimony concerning White's prior bad acts, the issue he felt was the strongest on appeal. Ward's tactical decision to limit the focus of the appeal did not render his assistance ineffective.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This authority is derived from the Supreme Court's decision in Granberry v. Greer, 481 U.S. 129 (1987). In this case the Court held that the courts of appeals could reach the merits of claims that had not been exhausted in state court for reasons of judicial economy. Of course the case presently before us is distinguishable in that the claims were exhausted in state court. Nonetheless, the rationale of Granberry is equally applicable here. A court of appeals should not cause judicial resources to be unnecessarily expended by remanding a case when it can dispose of the case itself