**UNITED STATES of America, Plaintiff,**

v.

**Gibson DIA, Jr., Defendant.**

**No. CR 92–818 TUC JMR.**

United States District Court,
D. Arizona,
Tucson Division.

July 8, 1993.

Raquel Arellano, Asst. U.S. Atty., Tucson, AZ, for plaintiff.

David P. Tiers, Tucson, AZ, for defendant.

## AMENDED ORDER

ROLL, District Judge.

### INTRODUCTION

On August 18, 1992, Defendant Gibson Dia, Jr., a Native American, forced 18–year–old "E." to engage in sexual acts against her will. A grand jury indicted and a petit jury convicted Dia on charges of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1). At the conclusion of the government's case, Dia moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a) and for a mistrial. Both motions were denied. This order is a fuller articulation of the reasoning supporting those decisions.

### JUDGMENT OF ACQUITTAL

Rule 29(a) requires the trial court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). "The trial court must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). To support the charge of aggravated sexual

abuse, the government offered the following testimony.

The victim, E., testified that she was eighteen years old at the time of the events in question and lived on the San Carlos Apache Indian Reservation with a female roommate. E. had only resided on the reservation for a few months, having lived in foster homes since the age of five. On the evening of August 17, 1992, Rose and Karen, two women both of whom were considerably older than E., came by E.'s home and invited her to accompany them out. The three women eventually went to Dia's residence so that Karen could collect a debt Dia owed her for the purchase of a pair of boots. Dia thereafter joined the three women and the foursome roamed about in Dia's pick-up truck, drinking a significant amount of alcohol throughout the night.

As the evening wore on, E. asked to go home, but Karen, Rose, and Dia resisted. Eventually, Karen and Rose, who were romantically involved with one another, abandoned the cab of the pick-up truck for the flat bed, leaving Dia and E. alone in the front. When Dia drove past E.'s residence without letting her out, E. protested. Shortly thereafter, E. jumped from the moving vehicle onto the road. Dia stopped the pick-up and set out in the direction that Karen and Rose indicated E. had gone. Rose and Karen left the area and walked home.

E. became disoriented after jumping from the truck. She was afraid of animals, including cattle and coyotes, and was relieved to see a human figure coming toward her so that she could ask directions, regain her bearings, and return home. As the figure advanced, E. recognized it to be Dia.

Dia carried a large stick and was swinging it in a threatening fashion. When Dia was close enough to grab E., a struggle ensued.

He dragged her a short distance and forced her to take off her jeans and panties.

At one point, E. was able to get loose and she began to run. Dia pursued her, and when he caught up to her, he grabbed her then punched her.

E. testified that the sexual assault was quite violent. She described how Dia bent her legs far back over her head making it hard for her to breathe. Eventually, Dia made her remove the rest of her clothing. E. stated that Dia forced her to repeatedly change positions and bit her on her breasts. After the physical assault, Dia verbally mocked and ridiculed her. He stated that "it's a good thing I got you before they did," referring to his female companions. Dia then pretended to be taking pictures of her while she was naked.

After E. returned home, she told her roommate what had happened. Because she feared she would lose a new baby-sitting job which was scheduled to begin that day, E. did not report the rape immediately. At the end of E.'s workday, however, her roommate convinced E. to contact the authorities. E. went to the hospital where attendants photographed bruises caused from the fall from the truck and bite marks on her breasts. The doctor who treated her at the hospital opined that based upon the visible injuries he observed, E. had been exposed to a violent sexual encounter.[1]

Evidence of spermatozoa, semen, and blood was removed from E.'s person and clothing. These specimens were later compared to samples of Dia's hair, blood, and saliva. Dia refused to comply with an investigator's request for samples, and the evidence was produced pursuant to court order. The laboratory analysis later conducted indicated that Dia could not be eliminated as the semen donor.[2]

---

1. The Court permitted the doctor to state his opinion that E.'s physical condition evidenced a violent sexual encounter. Cf. *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (evidence that victim displayed symptoms of battered child syndrome admissible). The Court did not, however, allow the doctor to testify that E. identified Dia as the perpetrator of the sexual assault.

2. An Arizona Department of Public Safety criminalist testified that Dia's blood type is O, with a PGM type of 1+. The semen stain on E.'s clothing was from a blood type O, with a PGM type of 1+. Approximately forty-two percent of the Native American population has these traits.

Viewing this evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that Dia was guilty of aggravated sexual abuse. *United States v. Roston*, 986 F.2d 1287, 1290 (9th Cir.1993). Accordingly, Dia was not entitled to a judgment of acquittal.

## MOTION FOR MISTRIAL

Dia's motion for mistrial was premised on the following alleged errors: (1) admission of evidence of two prior sexual assaults, (2) admission of evidence of Dia's refusal to voluntarily furnish samples of his blood, hair and saliva to law enforcement officers, and (3) failure to instruct the jury on sexual assault as a lesser-included offense of aggravated sexual assault. A court need not grant a motion for mistrial "when no reversible error has occurred...." *United States v. Bates*, 917 F.2d 388, 395 (9th Cir.1990).

## I.

### RULE 404(B) EVIDENCE

The government presented extrinsic evidence of two prior sexual assaults alleged to have been committed by Dia. The first act consisted of the alleged rape of 14–year–old "A." in 1976. The other act concerned the alleged rape of 16–year–old "E.L." in 1986.[3] Before this evidence was introduced, the district court instructed the jury that it could only consider this evidence as it might relate to intent, identity, and common scheme or plan.[4]

A., the victim of the alleged 1976 incident, testified that on August 2, 1976, 14–year–old A. and her 9–year–old brother were riding their bikes home from a friend's house. They encountered Dia, who was then 18 years old, and two of his younger companions. Dia and his companions forced A. and her brother from their bikes and A.'s brother ran away.

Dia grabbed A. and she began to scream. He then picked up a rock and repeatedly struck A. about the face with it. Dia then forcibly removed A.'s pants and panties and raped her. During the act, Dia covered A.'s mouth with his hand, causing her to have difficulty breathing. A. was very reluctant to testify in detail about the assault.

Although the government called Harold Kinney, one of the two young men with Dia at the time of the alleged incident, he repeatedly stated that he did not remember anything other than walking A. home.[5] Kinney's lack of memory is consistent with his additional statements that he wanted to avoid angering Dia's family. The government impeached Kinney with the testimony of Bureau of Indian Affairs Investigator Walliman Clark. Clark testified that Kinney had previously stated that he had seen A. naked from the waist down and with injuries.

The second act of uncharged misconduct introduced at trial concerned the alleged rape of E.L. in 1986. E.L. testified that she met Dia at a convenience store in Phoenix, Arizona on June 3, 1986 and agreed to accompany him and his two male companions to a house. E.L. went through a bedroom to use the bathroom and when she exited the bathroom, Dia was in the bedroom waiting for her. Dia blocked the door and eventually pushed E.L. onto the bed. He then struck

---

**3.** The government sought to introduce evidence of a third act, consisting of Dia's alleged 1985 rape of his ex-wife. According to the government's proffer, Dia kidnapped his ex-wife, beat her with his fists, and forced her to engage in oral, anal and vaginal sex, including acts involving a 12″ long dildo. Because of the absence of similarity to the underlying facts of the case for which Dia was on trial, this evidence was ruled inadmissible.

**4.** In addition, at the end of the trial, the Court gave an instruction fashioned by defense counsel. That instruction stated:
    You have heard evidence of other acts by the defendant. You may not consider the acts as

proof of the defendant's character or to suggest that the defendant acted in conformity with the prior act on this occasion. You may consider the evidence only as it bears on the defendant's intent, identity and common scheme or plan and for no other reason.

**5.** Based upon the government's pretrial response to Dia's motion in limine to exclude this evidence, it appears as though the government expected Kinney to testify that Dia chased A., dragged her some distance, and struck her with his fists. This testimony failed to materialize, however.

E.L. several times and covered E.L.'s mouth and nose to keep her from breathing. Dia forcibly removed her pants and underwear and raped her. During the assault, he folded E.L.'s legs back over her, inhibiting her breathing. Dia bit E.L. on her breasts and forced her to change positions several times. After the assault, Dia verbally ridiculed E.L. and threatened to have his companions rape her as well.[6]

The admission of these prior bad acts did not warrant a mistrial. Under the well-established precedent of this circuit, Rule 404(b) is "an inclusionary rule," under which evidence is inadmissible "only when it proves nothing but the defendant's criminal propensities." *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Evidence is properly admitted under Rule 404(b) if: 1) the evidence is admissible for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence outweighs any prejudicial impact; and, 4) the trial court, when appropriate, gives limiting instructions. *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). Evidence of uncharged misconduct constituting merely evidence of the defendant's bad character is, of course, inadmissible. *McKinney v. Rees*, 993 F.2d 1378 (9th Cir.1993).

Here, the proffered evidence was relevant to the government's burden of proving that Dia was the individual who committed the assault upon E. Dia made a blanket denial of any sexual contact with E., consensual or otherwise. This was his defense at trial. The prior bad act evidence admitted at trial tended to prove that he was the perpetrator of the assault upon E. The prior misconduct evidence was admitted for the sole purposes of establishing intent, identity, and common scheme or plan. The jury was repeatedly so instructed. The evidence was relevant and was admitted for proper purposes.

In *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990), the Ninth Circuit stated that four requirements exist for the admission of uncharged misconduct evidence offered pursuant to Rule 404(b):

(1) there must be proof of the prior bad act based on sufficient evidence; (2) the crimes or acts must not be too remote; (3) the prior conduct must be similar to the acts defendant is charged with; and, (4) the evidence must prove an essential element of the offense.[7]

The *Houser* test compliments the test articulated by the Supreme Court in *Huddleston*.

All the requirements of *Houser* have been met in this case.

First, sufficient evidence existed regarding proof of the prior acts. A jury could reasonably conclude, based upon the evidence presented, that each prior act occurred and that Dia was the perpetrator. *Dowling v. United States*, 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990); *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501.

Second, the uncharged misconduct evidence and the charged offense were similar in many striking respects. E. and E.L. were both forced to change positions repeatedly during the sexual assault, both were forced to bend their legs in positions impairing their breathing, and both sustained bites on their breasts during the assaults. E., A., and E.L. were all told to be quiet and were all struck in the face during the rapes. E. and E.L. were both mocked and ridiculed and threatened with additional assaults from Dia's companions. In all three assaults, the victims were initially forced only to remove the lower portion of their clothing. All three victims were young and petite at the time that the rapes took place. While these prior acts are

---

6. Dia entered a plea of guilty to sexual conduct with a minor in connection with the assault upon E.L. Dia's objection to admission of evidence concerning the conviction was sustained and the jury never learned of the conviction.

7. Under Rule 404(b), evidence may be admissible to prove certain traits listed in that rule even

though the traits may not constitute elements of the offense being tried. *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir.1988) (uncharged misconduct evidence must prove an element of the offense or must fall within one of the exceptions enumerated in Rule 404(b)).

not identical to the sexual assault for which Dia was convicted, sufficient similarities exist to constitute "significant signatures" pointing to the defendant as the perpetrator of all three assaults. *Featherstone v. Estelle*, 948 F.2d 1497, 1501–1502 (9th Cir.1991). Only an automaton could be expected to duplicate each subsequent act in an identical fashion. *Id.*, 948 F.2d at 1502.

Third, the prior acts were not too remote in time. While the first act occurred in 1976, the passage of several years since the time of commission of the prior bad act evidence does not necessarily preclude its admissibility. *United States v. Hadley*, 918 F.2d 848 (1990) (prior bad acts over 11 years old properly admitted in aggravated sexual abuse trial); *Cuch, supra* (prior sexual assault 7½ years earlier admissible in prosecution for aggravated sexual abuse); *Featherstone, supra* (prior rape 6½ years earlier admissible in prosecution for rape and other charges). The remoteness of the 1976 rape is substantially mitigated by the fact that the government possessed substantial evidence that Dia also committed forcible rapes in 1985 and 1986 and served 2½ years in prison for the 1986 assault. In light of Dia's alleged misconduct in the interim between 1976 and 1992, the 1976 rape was not too remote.

Fourth, the prior sexual assaults tended to prove the elements of intent and identity. Because of the manner in which all three forcible rapes were carried out, the government's evidence demonstrated unique features tending to identify Dia as the perpetrator of all three assaults. *Featherstone, supra.*

■ Finally, the probative value of the prior uncharged misconduct outweighed any unfair prejudice. Fed.R.Evid. 403. Furthermore, any prejudice was cured by the use of limiting instructions. *Hadley*, 918 F.2d at 852.

## II.

### REFUSAL TO SUBMIT TO TESTS FOR PHYSICAL EVIDENCE

■ Dia further maintains that evidence of his refusal to voluntarily donate blood, hair, and saliva samples when sought by law enforcement officers was erroneously admitted. The Court disagrees. This evidence was admissible and did not constitute an impermissible comment upon Dia's exercise of his privilege against self-incrimination. *See South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (admission of evidence of defendant's refusal to submit to blood-alcohol test did not violate defendant's right against self-incrimination); *Deering v. Brown*, 839 F.2d 539 (9th Cir.1988).

## III.

### JURY INSTRUCTION ON SEXUAL ABUSE

■ Dia's final argument is that the Court erred in refusing to the instruct the jury that sexual abuse is a lesser included offense of aggravated sexual abuse.[8] The Ninth Circuit has recently ruled to the contrary. In *United States v. Sneezer*, 983 F.2d 920, 923 (9th Cir.1992), the Ninth Circuit concluded that sexual abuse is not a lesser included offense of aggravated sexual abuse. Aggravated sexual abuse requires actual use of force; sexual abuse does not. *Id.* Dia was not entitled to a form of verdict on the charge of sexual abuse.

### CONCLUSION

For the reasons set forth above, the Court reaffirms its earlier rulings denying Defendant Gibson Dia, Jr.'s oral motions for judgment of acquittal and mistrial.

---

**8.** Defense counsel simultaneously informed the Court that the Eighth Circuit ruled that sexual abuse is not a lesser included offense of aggravat-

ed sexual assault. *United States v. Fire Thunder*, 908 F.2d 272, 274 (8th Cir.1990).