Don Soon PARK, Petitioner–Appellant,

v.

People of the State of CALIFORNIA; Attorney General of the State of California, Respondents–Appellees.

No. 96–56750.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1998.

Decided Jan. 14, 1999.

Sharon M. Bunzel, O'Melveny & Myers, San Francisco, California, for the petitioner-appellant.

Carl N. Henry, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: HUG, Chief Judge, FLETCHER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Don Soon Park seeks review of a decision by the District Court for the Central District of California dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254(a) (1994). Park brought five claims before the district court. The district court dismissed Park's first claim on the merits, holding that the state court's consolidation for trial of crimes committed on different occasions did not present a federal due process concern. The district court dismissed Park's remaining claims as procedurally defaulted in the California courts. Unlike the claim of improper consolidation, Park had not brought those claims on direct appeal from his conviction, and the district court concluded that Park did not qualify for relief from his default by having demonstrated either cause and prejudice or actual innocence. We have jurisdiction under 28 U.S.C. § 2253 (1994), and we affirm in part, reverse in part, and remand.

## I

### Background

Park is incarcerated in California after convictions on five counts stemming from two separate incidents of criminal behavior. For his crimes against Munho Kim, Park was convicted of conspiracy to commit robbery, conspiracy to commit burglary, first degree residential burglary, and attempted first degree residential robbery. For his subsequent crime against Keum Kim, Park was convicted on one count of making terrorist threats but acquitted on counts of use of a destructive device and explosives to injure/destroy and arson of a structure.

The Munho Kim crimes were the result of a plan hatched by Park, Michael Nelson, and Raymond Sander to rob Munho Kim, who owed Park money. On August 20, 1991, Sander and Nelson followed Munho into his garage and attacked him while Park waited a few blocks away in his automobile. Nelson and Sander abandoned the robbery attempt when Munho's wife entered the garage and screamed, but were detained by the police while trying to flee. Park escaped.

Park's crime against Keum Kim occurred almost a year later. Park demanded money from Keum on account of a statement by her granddaughter that Park found defamatory and for a debt owed to Park by Keum's son. Keum refused to pay. Park repeatedly demanded payment over a period of several months, ultimately threatening to bomb Keum's family liquor store and kill Keum and her family. On June 8, 1992, the store

owned by Keum's family was destroyed by a pipe bomb.

Nelson pled guilty to his involvement in the Munho Kim crimes and cooperated with police, participating in two inculpatory taped conversations while still in jail with Park, who was not in custody, discussing the burglary and attempted robbery. Nelson was released and continued his friendship with Park, the latter not aware of Nelson's cooperation with the police. Nelson testified that Park then informed him of Park's intention to "blow up" Keum's family store.

At Park's trial, Nelson testified against Park, and the tapes that Nelson had cooperated in making were introduced into evidence. Park's counsel discovered at trial that Nelson had been a government informant on other matters and moved for a mistrial, arguing that he had been surprised and denied the opportunity to conduct discovery with regard to possible bias. The trial court held an in camera hearing on the extent of Nelson's role as an informant for the police and denied the motion, concluding that Nelson's informant role did not involve information which might impeach Nelson's testimony. The court later gave the jury a standard instruction warning them about the suspect credibility of a cooperating witness.

The state trial court, over Park's objection, permitted the state to consolidate the two sets of crimes into one trial, and Park was convicted on all four Munho Kim counts and the terrorist threats count from the Keum Kim crimes. Park appealed the state court's refusal to sever the counts for trial. The appellate court affirmed the consolidation. The California Supreme Court denied review. Park then brought a habeas petition in the California Supreme Court, claiming prosecutorial misconduct for failing to disclose Nelson's informant status, abuse of the trial court's discretion for permitting the secret tapes to be entered into evidence, and denial of the right to a speedy trial. Park's petition variously characterized his claims as violations of both the federal and the California constitutions and California statutes, citing statutes and provisions of each constitution and caselaw pertaining to each body of law. The California Supreme Court denied the petition with only this explanation: "Petition for writ of habeas corpus DENIED. (*See In re Dixon* (1953) 41 Cal.2d 756, 759, 264 P.2d 513.)." Park then brought this habeas petition in federal district court, arguing error under California state law in consolidating the sets of counts, prosecutorial misconduct in failing to disclose that Nelson had been a government informant, abuse of discretion by the California trial court in permitting the jury to hear a secret jailhouse tape, and denial of his right to a speedy trial.

## II

### Standard of Review

■ This court reviews a district court's decision to deny an application for a writ of habeas corpus de novo. *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir.1997). Factual findings are reviewed for clear error. *United States v. Span*, 75 F.3d 1383, 1386 (9th Cir.1996).

## III

### Consolidation of Counts

■ Federal habeas is available for improper consolidation only if the simultaneous trial "actually render[ed Park]'s state trial fundamentally unfair and hence, violative of due process." *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991). This court considers each count separately, asking whether "the trial on a particular count was fundamentally unfair in light of that count's joinder with one or more other charges." *Id.* Park has the burden to prove unfairness rising to the level of a due process concern. *See McKenzie v. McCormick*, 27 F.3d 1415, 1418 (9th Cir.1994). We hold that Park's arguments fail to fulfill his burden and affirm the district court's decision on this claim.

■ Park argues first that, under California law, the crimes should not have been consolidated because evidence relevant to one set of counts would not have been admissible at a separate trial on the other set of counts. However, a violation of state law standing alone is not cognizable in federal court on habeas. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for

errors of state law.' ") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)); *Featherstone*, 948 F.2d at 1503. Park has failed to meet his burden of showing, in federal constitutional terms, that his state trial was fundamentally unfair. We have held that the failure of the jury to convict on all counts is " 'the best evidence of the jury's ability to compartmentalize the evidence.' " *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993) (quoting *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir.1987)). The jury did not convict Park on two of the Keum Kim counts, strong evidence that he was not prejudiced by the admission of evidence which was possibly irrelevant with regard to some of the counts.

■ Park next argues that the consolidation was likely to inflame the jury against him. In order to demonstrate actual unfairness, however, Park must show that the jury was actually inflamed. *See Featherstone*, 948 F.2d at 1503. Park makes no such showing and, as discussed above, because the jury did not convict on all counts it presumably was able to compartmentalize the evidence. *See Baker*, 10 F.3d at 1387.

■ Park argues third that the prosecution combined two weak cases to make a stronger case in the aggregate. This circuit recognizes potential due process concerns when a poorly-supported count is combined with one that is well supported. *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir.1986). Park points out that the prosecution did not file charges on the Munho Kim counts until after the Keum Kim crimes were committed. However, if evidence regarding the Keum Kim counts was stronger than evidence regarding the Munho Kim counts Park presumably would have been convicted on all of the Keum Kim counts and not all of the Munho Kim counts, not the other way. Further, the record indicates that the jury found Nelson's testimony credible, even in the light of a limiting instruction admonishing the jury to view his testimony with distrust. Nelson's testimony was a large part of the government's case against Park on the Munho Kim counts. Park's argument that

the state's case was weak is not supported by the record.

## IV

### Procedural Default

■ The district court held Park's remaining claims procedurally defaulted and did not consider their merits. A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For the procedural default rule to apply, the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief. *Id.* at 729–30, 111 S.Ct. 2546; *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir.1997). We hold that the rule that the California Supreme Court followed when holding Park's claims procedurally defaulted was not independent with regard to three of Park's claims. Accordingly, we reverse the district court's decision on two claims. We affirm on the third claim on different grounds.

### A

### California's *Dixon* Rule

In California, for Park to bring claims in a state habeas petition, he must, if possible, have pursued the claims on direct appeal from his conviction. *See Ex parte Dixon*, 41 Cal.2d 756, 264 P.2d 513, 515 (Cal.1953). This requirement is called the *Dixon* rule. Park did not appeal his latter four claims for habeas relief from his state court conviction. If at the time of Park's failure to appeal the *Dixon* rule was an adequate [1] and independent ground on which to base a denial of relief, and the California Supreme Court unambiguously relied on *Dixon*, Park would be barred from bringing this petition for failure to appeal from his conviction, *see Dixon*, 264 P.2d at 515, unless he could establish grounds for relief from his default.

---

1. Park argues that the *Dixon* rule was not an adequate basis for the California Supreme Court to deny review at the time of his appeal from his conviction. Because we hold that the *Dixon* rule

was not independent as applied to Park's claims, we do not decide whether *Dixon* was an adequate state ground for default.

■ In the years following *Dixon*, the California Supreme Court carved exceptions to the *Dixon* rule and other procedural bars in individual cases. *See In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 740 (Cal.1993). Terming its various procedural bars "discretionary," the court noted that strong justification could warrant an exception to a procedural bar. *Id.; In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391, 398 (Cal.1993). Because the exceptions to its procedural bars had become obscured over the years, the State Supreme Court in its 1993 *Harris* and *Clark* decisions set specific standards to govern California courts' exercise of discretion when applying, respectively, the *Dixon* rule and the bar of "untimeliness." The decisions were intended to "reestablish California's procedural rules governing state habeas petitions and clearly define and limit the applicable exceptions." *Fields*, 125 F.3d at 763–64. Specifically, a California court will hear the merits of a claim in a state habeas petition, despite the petitioner's failure to bring the claim on direct appeal from the conviction, if the court finds one of four exceptions. These exceptions are: (1)" 'fundamental constitutional error,' " (2) a lack of " 'fundamental jurisdiction' " by the trial court over the petitioner, (3) the trial court's " 'acting in excess of jurisdiction,' " and (4) an intervening " 'change in the law.' " *Id.* at 763 (quoting *Harris*, 21 Cal.Rptr.2d 373, 855 P.2d at 398–407).[2]

## B

### Independence

■ For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *see Harris v. Reed*, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (applying *Long* to federal habeas cases). Otherwise, the state may fairly be said to have examined the federal claim, eliminating the concept of procedural default. A state law ground is so interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

■ The California Supreme Court just recently stated that *Clark*'s constitutional error exception "obviously may include federal constitutional claims." *In re Robbins*, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 338 (Cal.1998). As discussed in note three, above, the *Harris* constitutional error exception is identical to that in *Clark*. The California Supreme Court's statement with regard to *Clark* serves as an acknowledgment that the *Harris* "fundamental constitutional error" exception to its *Dixon* procedural default rule renders that bar interwoven with the merits of federal claims. *See Robbins*, 77 Cal.Rptr.2d 153, 959 P.2d at 339 n. 32, 340 n. 34.

The California Supreme Court has adopted in *Robbins* a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted. *Id.* 959 P.2d at 339. We express no opinion here as to whether *Robbins* establishes the independence of California's *Harris*, *Clark*, and *Dixon* rules for the future. *Robbins* is clear, however, that its new approach is prospective, and would not have applied when the California Supreme Court denied Park's habeas petition. *See id.* 959 P.2d at 338–39 ("[W]e shall, in this case and in the future, *adopt* the following approach as our standard practice." (emphasis added)).

Accordingly, at the time of Park's habeas petition, the California Supreme Court's denial based on *Dixon* did not identify a "particular procedural rule that completely barred" Park's federal constitutional claims. *Siripongs v. Calderon*, 35 F.3d 1308, 1317

---

2. *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (Cal.1993), dealt specifically with the bar of "untimeliness," a separate and distinct bar from the *Dixon* rule. *See In re Robbins*, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 340 n. 34 (Cal.1998). The *Robbins* court explained that the four exceptions stated in *Harris* applied to the *Dixon* rule and to a procedural bar set out in *In re Waltreus*, 62 Cal.2d 218, 42 Cal.Rptr. 9, 397 P.2d 1001 (Cal.1965). *Robbins*, 77 Cal.Rptr.2d 153, 959 P.2d at 340 n. 34. Four exceptions set out in *Clark*, of which one was likewise a "fundamental constitutional error" exception, applied to the untimeliness bar. *Id.*

(9th Cir.1994). Rather, in light of *Robbins'* acknowledgment that the constitutional error exception required California courts to consider the merits of federal constitutional questions, the California Supreme Court necessarily made an antecedent ruling on federal law before applying the *Dixon* bar to any federal constitutional claims raised in Park's state habeas petition. Thus, if any of Park's claims rested on an assertion of a denial of a federal constitutional right, he cannot be held to have procedurally defaulted under *Dixon.*

Park's second claim in the instant petition, which he brought in his state petition, raised prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to disclose Nelson's informant status and thereby preventing Park from conducting relevant discovery. *Brady* was based on the federal constitutional due process concern associated with the prosecution's failure to disclose a witness's informant status. 373 U.S. at 85, 83 S.Ct. 1194. Park's claim thus alleged federal constitutional error and required the California Supreme Court to address the merits of the federal claim before applying the *Dixon* procedural bar. *Robbins*, 77 Cal.Rptr.2d 153, 959 P.2d at 340 n. 34. *Dixon* was not an independent procedural bar as applied to Park's *Brady* claim, so this claim was not procedurally defaulted.

Likewise, Park's third claim, also articulated in his state petition, alleges federal constitutional error in the improper admission at his trial of some of the information contained on the jailhouse tapes. Because this claim alleges a federal constitutional error, the *Dixon* rule is not independent when applied to it. Nevertheless, admission of evidence is a state law concern, unless the state trial court's decision is error rising to the level of a due process violation. *McGuire*, 502 U.S. at 67, 112 S.Ct. 475. Other than citing to the Fifth, Ninth, and Fourteenth Amendments, Park's arguments all relate to California law relevancy standards for admitting evidence. At the time that the tapes were recorded, although Nelson had been charged with a crime, Park was not in custody and had not been charged. We hold that Park failed to fulfill his burden adequately to allege and demonstrate that the admission of the tape recorded evidence of guilt constituted a violation of due process. *See Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir.1998). Thus, although we consider this claim not to have been procedurally defaulted, no matter how Park styles the claim, it is not cognizable on federal habeas.

Finally, Park's fourth claim in the instant petition, which he also brought in his state petition, raised as a federal constitutional claim the denial of his right to a speedy trial. Park cited to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which articulated the test for a federal constitutional claim of the denial of a right to a speedy trial. *Id.* at 530–33, 92 S.Ct. 2182. Because Park's speedy trial claim alleged federal constitutional error, *Dixon* was not an independent bar as applied to this claim.

We reverse the district court's holding of procedural default on Park's *Brady* and speedy trial claims, and hold that Park's admission of evidence claim was not procedurally defaulted but affirm on the ground that Park did not adequately allege a due process violation in his federal petition.

## V

### Park's Remaining Arguments

In the briefs and at argument on this appeal, Park's counsel discussed claims of ineffective assistance of trial and appellate counsel. Park's argument in this regard was that the delay from the alleged denial of his right to a speedy trial necessarily detracted from his counsel's ability to defend him. Park did not raise ineffective assistance of trial counsel as an independent claim in either his state or the current petition.

In his state petition, Park raised ineffective assistance of counsel only as an excuse for his failure to bring claims on direct appeal. We could entertain this argument as "cause" for Park's procedural default, excusing the default only if Park could demonstrate prejudice and had exhausted this claim in state court. *See Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Because we do not hold any of Park's claims procedurally defaulted, however, we do not reach the cause and prejudice exception. We do not consider either ineffective assistance of counsel arguments be-

cause Park did not raise them as claims in the instant petition.

## VI

### Conclusion

For the foregoing reasons, we affirm the district court in holding that Park's improper consolidation claim fails on the merits. We reverse as to Park's *Brady* and speedy trial claims and hold that those claims were not procedurally defaulted at the state level. We affirm as to Park's improper admission of evidence claim on the grounds that Park failed to adequately allege and prove a due process violation, and affirm with regard to Park's remaining claims because Park did not present claims of ineffective assistance of trial or appellate counsel in his federal petition.

AFFIRMED in part, REVERSED in part, and REMANDED.