**Ronald Wayne McCLAIN, Petitioner,**

v.

**D.R. HILL, Warden, et al., Respondents.**

**No. CV 97–0007–GHK(RC).**

United States District Court, C.D. California.

May 19, 1999.

Ronald Wayne McClain, Tehachapi, CA, pro se.

Kerrigan M. Keach, Deputy Atty. General, Los Angeles, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KING, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; (3) the petitioner's request to amend the habeas corpus petition is denied; and (4) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION ON A STATE HABEAS CORPUS PETITION

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable George H.

King, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On September 14, 1990, in the Superior Court for Los Angeles County, petitioner Ronald Wayne McClain was convicted by a jury of first degree murder in violation of California Penal Code ("P.C.") § 187(a) (count 1) and five counts of first degree burglary in violation of P.C. § 459 (counts 2, 6, 7, 8 and 9). Clerk's Transcript ("CT") 223, 226, 234–39, 241–42. Co-defendants Kevin Jones and Randall McClain also were both convicted of first degree murder (count 1), co-defendant Randall McClain was convicted of one count of first degree burglary (count 2) and co-defendant Jones was convicted of four counts of first degree burglary (counts 2, 3, 4 and 5). CT 222, 224–25, 227–34, 240. The petitioner was sentenced on the murder to twenty-five years to life and on four burglary counts to consecutive terms of one year and four months each, for a total term of 30 years to life, to run consecutively to a sentence petitioner was already serving. CT 247, 251–53; Reporter's Transcript ("RT") 376:17–25, 383:14–385:4.

The petitioner appealed his convictions to the California Court of Appeal, with petitioner's appellate counsel filing a brief under *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979). CT 256; Return, Ex. 3.[1] On July 15, 1992, the California Court of Appeal affirmed the convictions in an unpublished opinion. Return, Ex. 4. The petitioner did not seek review from the California Supreme Court.

1. The respondents have lodged certain documents relating to the instant petition with their return. For convenience, this Court will refer to the lodged documents as Exhibits 1 through 8 to the return.

2. The petitioner has attached several pages to his habeas corpus petition, including three

On June 6, 1995, the petitioner filed a petition for writ of habeas corpus in Los Angeles County Superior Court. Petition at 5A.[2] The petition was denied on June 7, 1995. *Id.* On July 3, 1995, the petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which denied the petition on July 5, 1995. Petition, 5B; Return, Exs. 5–6. On August 22, 1995, the petitioner filed a petition for writ of habeas corpus in the California Supreme Court. On October 25, 1995, the California Supreme Court denied the petition, citing *In re Swain*, 34 Cal.2d 300, 304, 209 P.2d 793 (1949) and *In re Dixon*, 41 Cal.2d 756, 759, 264 P.2d 513 (1953). Petition at 5C; Return, Ex. 8.

On or about February 2, 1998, plaintiff requested leave from the California Supreme Court to file a second habeas corpus petition raising a claim that his appellate counsel was ineffective for filing a Wende brief. Request to Amend Petition for Writ of Habeas Corpus ("Request to Amend"), Ex. A. The California Supreme Court treated plaintiff's application as a new habeas corpus petition, and denied it on July 29, 1998, with citation to In re Swain. Request to Amend, Ex. B.

### II

The Court makes the following findings of fact regarding petitioner's convictions:

### A. Esther Mae Allen (counts I and 2):

On October 26, 1989, Esther Mae Allen, an 80-year-old woman, lived alone at 248 Obispo, Long Beach, California. RT 160:22–161:17, 186:11–28. On October 27, 1989, at approximately 7:20 a.m., Joan Walsh, Mrs. Allen's daughter, telephoned her mother but received no answer. RT 187:6–14. Ms. Walsh became concerned

unnumbered pages between pages 5 and 6. These pages will be referred to as pages 5A–C. The petitioner has also attached an additional unnumbered page of allegations between pages 6 and 7. This page will be referred to as page 6A. The additional pages attached following his petition will be numbered sequentially beginning with page 9.

and went to her mother's house, where she discovered blood on the walls and on her mother's bed. RT 187:1–3, 187:21–188:17. Ms. Walsh immediately telephoned the police. RT 189:26–190:7.

Subsequently, Ms. Walsh heard a noise and found her mother, who had been badly injured. RT 190:10–27. Mrs. Allen was transported to the hospital, but she never regained consciousness. RT 224:5–13. She died from cranial cerebral trauma caused by repeated (more than ten) blows to her head with a blunt instrument, such as a crowbar or tire iron. RT 220:9–223:15, 224:14–225:1.

Further investigation revealed that Mrs. Allen's house had been ransacked. RT 172:24–173:9. A screen was removed from the kitchen window, which was open, while all the other windows in the house were closed and locked. RT 179:1–18, 180:18–21. There were scuff marks on the wall outside the window, consistent with someone putting his feet on the wall to boost himself up through the window, and the dust on the kitchen windowsill was freshly disturbed and smeared. RT 178:18–28, 179:19–180:25.

Mrs. Allen's purse was found in the hallway with its contents emptied out. RT 174:13–19, 191:3–21. Her wallet was never located, and a cable box, previously located on the television, was never recovered. RT 167:5–19, 192:3–14.

### B. Adelina Gallegos (count 6):

On February 27, 1990, Adelina Gallegos, who lived at 1504 Ohio Avenue, Long Beach, returned home to find that a window in her home had been broken and that various things, including a television, a videocassette recorder, jewelry and money, were missing. RT 36:25–38:7. Although petitioner was never given permission to enter Ms. Gallegos's home, his fingerprints were found on a five-gallon water bottle in the rear of the residence. RT 38:8–16, 108:9–109:23, 122:12–123:3.

### C. Sherri Gonser (count 7):

On March 2, 1990, Sherri Gonser, who resided at 1536 Temple, Long Beach, arrived home to discover that one of her bedroom windows had been broken and that a television, guitar and some jewelry were missing from her home. RT 46:9–47:5. Although petitioner was never given permission to enter Ms. Gonser's home, his fingerprints were found on the outside of the broken glass window and on broken glass inside her home. RT 47:6–15, 104:24–106:3, 124:7–18.

### D. Janice Ede (count 8):

On March 5, 1990, Janice Ede, who lived at 1727 Molino, Long Beach, returned home and discovered that her kitchen window was open and a videocassette recorder had been taken. RT 43:4–26. Although petitioner was never given permission to enter Ms. Ede's home, his fingerprints were located on metal containers located in a rear bedroom. RT 44:3–8, 112:7–113:8, 123:21–124:6.

### E. Cynthia Burkart (count 9):

On February 26, 1990, Cynthia Burkart, who resided at 2742 East 17th, Long Beach, returned home to discover that a window in her living room had been broken and opened, a second window that she always kept closed had been opened, and her television was gone. RT 39:24–40:16. Although petitioner was never given permission to enter Ms. Burkart's home, his fingerprints were found on a hardware organizer inside a bedroom closet and on the outside of the living room window. RT 40:22–41:7, 91:28–92:18, 123:4–20.

### III

On January 2, 1997, petitioner filed the instant petition for writ of habeas corpus, claiming the following two grounds for relief:

Ground one—An incriminating statement petitioner made to police on April 30, 1990, was admitted into evidence in viola-

tion of petitioner's Miranda rights and the Sixth Amendment. Petition at 6–6A, 11.

Ground two—The petitioner was denied the effective assistance of trial counsel when his attorney "conceded the petitioner[']s guilt [to the burglaries] ... at the guilt/innocent phase of the trial, and concentrated on an argument [denying the murder,] more properly directed to the penalty phase of the trial." Petition at 6–7, 11.

On October 6, 1997, the respondents filed a return to the petition for writ of habeas corpus. On December 8, 1997, petitioner filed a traverse to the return. On November 25, 1998, the respondents filed a supplemental return, arguing that petitioner's claims are barred by In Re Dixon and In Re Swain. On December 14, 1998, petitioner filed a supplemental traverse.

On September 15, 1998, petitioner filed a request to amend his habeas corpus petition to add a claim of ineffective assistance of appellate counsel, arguing that the filing of the Wende brief constitutes ineffectiveness. This request is pending.

## DISCUSSION

### IV

The petitioner's claims must be considered in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"),[3] which "worked substantial changes to the law of habeas corpus." *Moore v. Calderon,* 108 F.3d 261, 263 (9th Cir.), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In affirming petitioner's convictions, the California Court of Appeal did not address the constitutional claims raised by petitioner in the instant petition. Similarly, the California Supreme Court, in denying petitioner's habeas corpus petition without explanation, did not address these claims. Therefore, this Court must independently review the petitioner's claims. *Delgado v. Lewis,* 168 F.3d 1148, 1152 (9th Cir.1999).

### V

The federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991). This doctrine is generally known as the adequate and independent state grounds doctrine. A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time it was applied by the state court. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *Poland v. Stewart,* 169 F.3d 573, 585 (9th Cir.1999). A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985); *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3475, 77 L.Ed.2d 1201 (1983); *Poland,* 169 F.3d at 585.

"[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass,* 28 F.3d 1005, 1008 (9th Cir.1994). The procedural default

3. Pub.L. No. 104–132, 110 Stat. 1214.

doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman,* 501 U.S. at 729–30, 111 S.Ct. at 2554.

■ The respondents contend that petitioner's claims are procedurally barred because the California Supreme Court denied petitioner's habeas corpus petition with citations to both In re Dixon[4] and In re Swain.[5] For the following reasons, the respondents are mistaken:

> Because the exceptions to [the California Supreme Court's] procedural bars had become obscured over the years, the Supreme Court in its 1993 Harris[6] and Clark[7] decisions set specific standards to govern [the] California courts' exercise of discretion when applying, respectively, the Dixon rule and the bar of "untimeliness." The decisions were intended to "reestablish California's procedural rules governing state habeas petitions and clearly define and limit the applicable exceptions." Specifically, a California court will hear the merits of a claim in a state habeas petition, despite the petitioner's failure to bring the claim

on direct appeal from conviction, if the court finds one of four exceptions. These exceptions are: (1) "fundamental constitutional error," (2) a lack of "fundamental jurisdiction" by the trial court over the petitioner, (3) the trial court's "acting in excess of jurisdiction" and (4) an intervening "change in the law."

*Park v. California,* 164 F.3d 1226, 1231 (9th Cir.1999) (internal quotation marks and citations omitted). Where a federal constitutional claim is raised in a habeas petition, a denial of the petition with a citation to In re Dixon by the California Supreme Court, before August 3, 1998, does not constitute an independent state law ground barring a federal court from addressing the merits of a state prisoner's habeas corpus petition. *Park,* 164 F.3d at 1231–32.[8] The California Supreme Court's denial of petitioner's habeas corpus petition with citation to In re Dixon, thus, does not constitute an independent state procedural bar, and petitioner's claims are not procedurally defaulted.

Under In re Dixon, the relevant point of reference for assessing the application of its rule "is the time at which the petitioner 'had an opportunity to raise the claims on

---

4. A citation to In re Dixon indicates that the failure to raise an issue on appeal generally prohibits raising the issue in a post-appeal habeas corpus petition. *Fields v. Calderon,* 125 F.3d 757, 762 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998); *In re Harris,* 5 Cal.4th 813, 825 n. 3, 21 Cal.Rptr.2d 373, 377 n. 3, 855 P.2d 391 (1993).

5. A citation to In re Swain may indicate two different things. The first meaning is that petitioner has not made allegations with sufficient particularity. *In re Swain,* 34 Cal.2d 300, 209 P.2d 793; *Kim v. Villalobos,* 799 F.2d 1317, 1319 (9th Cir.1986); *Harris v. Superior Court,* 500 F.2d 1124, 1128 (9th Cir. 1974), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975). The second meaning is that the petitioner has failed to explain his delay in raising an issue. *In re Swain,* 34 Cal.2d 300, 209 P.2d 793; *Van Geldern v. Field,* 498 F.2d 400, 402 (9th Cir. 1974); *Lee v. Marshall,* 843 F.Supp. 608, 611 (C.D.Cal.1993), *rev'd on other grounds,* 42 F.3d 1296 (9th Cir.1994). Here, petitioner's claims are sufficiently specific; however, there is an unexplained three-year delay be-

tween the denial by the Court of Appeal of petitioner's appeal and the filing of the petition for writ of habeas corpus. Thus, the second meaning of Swain applies.

6. *In re Harris,* 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993).

7. *In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993).

8. The Ninth Circuit opinion in Park relied on *In re Robbins,* 18 Cal.4th 770, 811, 77 Cal. Rptr.2d 153, 181, 959 P.2d 311 (1998), in which the California Supreme Court stated that the constitutional error exception "obviously may include federal constitutional claims." *Park,* 164 F.3d at 1231–32. "[I]n light of Robbins' acknowledgment that the constitutional error exception required California courts to consider the merits of federal constitutional questions, the California Supreme Court necessarily made an antecedent ruling on federal law before applying the Dixon bar to any federal constitutional claims raised in [a] state habeas petition." *Id.*

direct appeal.'" *Fields*, 125 F.3d at 760–61 (citations omitted). Here, that occurred before July 29, 1993—the date the California Supreme Court decided In re Clark and In re Harris; thus, the California Supreme Court's citation to In re Dixon "is not an adequate state ground to bar federal habeas review of [petitioner's] defaulted claims." *Fields*, 125 F.3d at 760–61, 763.

■ The California Supreme Court's citation to In re Swain as an "untimeliness" bar does not constitute an independent state procedural bar, under the rationale of Park, and the claims are not procedurally barred in this Court. *Park*, 164 F.3d at 1231 n. 2.

## VI

■ The Fifth Amendment privilege against self-incrimination provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." [9] In Miranda, the United States Supreme Court established a prophylactic procedural mechanism to safeguard a defendant's Fifth Amendment privilege against the inherently coercive effects of custodial interrogation. *Miranda*, 384 U.S. at 457–58, 86 S.Ct. at 1619. Thus, Miranda requires that before questioning a suspect in custody, law enforcement officials must inform the suspect that:

> He has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 444, 478–79, 86 S.Ct. at 1612, 1630. No additional warnings are required under Miranda. *United States v. Lares–Valdez*, 939 F.2d 688, 689 (9th Cir.1991) (per curiam).

■ A defendant may waive his Miranda rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *Colorado v. Spring*, 479 U.S. 564, 566, 572–73, 107 S.Ct. 851, 853, 856–57, 93 L.Ed.2d 954 (1987); *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986). To determine whether a waiver is voluntary, "[f]irst, the relinquishment of the right must have been ... the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141 (citations omitted); *Spring*, 479 U.S. at 573, 107 S.Ct. at 857. "Only if the 'totality of the circumstances surrounding the interrogation'" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Ibid.*

■ Here, petitioner contends that his Miranda and Sixth Amendment [10] rights were violated when a statement he made to two Long Beach Police Department officers about the murder of Esther Mae Allen was admitted into evidence at his trial.[11] Complaint, at 6. The petitioner

---

**9.** The privilege against self-incrimination applies to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 1494, 12 L.Ed.2d 653 (1964).

**10.** Although petitioner cites the Sixth Amendment, this right "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). Thus, petitioner's right

to counsel does not derive from the Sixth Amendment since no adversary judicial proceedings had commenced when petitioner was questioned. *McNeil*, 501 U.S. at 175–76, 111 S.Ct. at 2207–08.

**11.** Detective Wren testified that petitioner made the following statement to him:

> JUST BEFORE HALLOWEEN[,] AS IT WAS GETTING DARK[,] HE [PETITIONER] ENTERED A HOUSE WITH THE INTENT TO COMMIT A BURGLARY. HE WAS NOT WEARING GLOVES. HE WAS SHOWN SEVERAL PHOTOGRAPHS OF

concedes that, before he was initially questioned about Mrs. Allen's murder, he "read and signed a Miranda rights form and waived such rights." Complaint, at 6. The petitioner does not claim that his waiver was not voluntarily, knowingly or intelligently made. Instead, he claims that since his incriminating statement was made two days later, during a second interview, and he was not again informed of his Miranda rights before the second interview, his statement was made in violation of his Miranda rights. There is no merit to this claim.

■ "There is no requirement that an accused be continually reminded of his rights once he has intelligently waived them." *United States v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir.1995) (citation and internal quotation marks omitted), *cert. denied,* 516 U.S. 1164, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996); *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir.1973) (per curiam). When a suspect has been informed of and waives his Miranda rights, "[a] rewarning is not required simply because there is a break in questioning." *People of the Territory of Guam v. Dela Pena,* 72 F.3d 767, 769–70 (9th Cir.1995); *Andaverde,* 64 F.3d at 1313; *See also Wyrick v. Fields,* 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982) (per curiam) (defendant, who requested polygraph and waived Miranda rights, did so not only for the polygraph but also "validly waived his right to have counsel present at 'post-test' questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights."). Thus, the mere passage of two days between the time petitioner was informed of and waived his Miranda rights and the time he made his incriminating statement does not violate the Fifth Amendment. *See Dela Pena,* 72 F.3d at 767 (fifteen hours between Miranda warning and waive and confession did not render confession inadmissible); *Andaverde,* 64 F.3d at 1313 (one day interval between Miranda warning and waiver and incriminating statement did not render statement inadmissible); *Puplampu v. United States,* 422 F.2d 870 (9th Cir.) (per curiam) (statements admissible when defendant advised of Miranda rights two days earlier), *cert. denied,* 399 U.S. 914, 90 S.Ct. 2217, 26 L.Ed.2d 571 (1970); *Maguire v. United States,* 396 F.2d 327, 331 (9th Cir.1968) (when adequate Miranda warnings were given three days before, the court held "even if the warning given by [the second officer] was insufficient, the [defendant] could not claim he had not been apprised of the Miranda warning"), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969). Therefore, the denial of this claim by the California Supreme Court was neither contrary to, nor an unreasonable application of, federal law under 28 U.S.C. § 2254(d).

THE INTERIOR AND EXTERIOR OF 248 OBISPO. HE IDENTIFIED SEVERAL PHOTOGRAPHS OF THE INTERIOR OF THE HOUSE. [¶] ENTRY WAS MADE THROUGH THE KITCHEN WINDOW. THE BACK DOOR WAS OPEN TO ENTER. [¶] A TIRE IRON WAS TAKEN INTO THE HOUSE. HE WALKED THROUGH THE LAUNDRY ROOM AND INTO THE KITCHEN. HE THOUGHT SOMEBODY MIGHT HAVE BEEN IN THE HOUSE. [¶] HE IDENTIFIED PHOTOGRAPHS OF THE INTERIOR OF THE HOUSE, SPECIFICALLY THE LAUNDRY ROOM, A BACK DOOR, AND THE LIVING ROOM. THERE WERE ITEMS PILED UP IN THE LIVING ROOM. [¶] HE WAS SHOWN A PHOTO OF THE DINING ROOM OUTSIDE OF THE KITCHEN. HE WAS NOT SURE IF HE REMEMBERED THAT ROOM. [¶] HE IDENTIFIED A PHOTO OF THE KITCHEN, WHICH HE STATED LOOKED LIKE THE KITCHEN THAT HE HAD WALKED THROUGH. [¶] HE WAS SHOWN A PHOTO OF THE FRONT OF THE HOUSE WHICH HE DID NOT RECOGNIZE. HE WAS SHOWN A PHOTO OF THE VICTIM, MRS. ESTHER ALLEN, AND HE STATED HE NEVER SAW HER. [¶] HE TOOK A VCR, HE IDENTIFIED A PHOTOGRAPH OF A TV AS BEING IN THE HOUSE. THE VCR WAS ON TOP OF THE TV. [¶] AFTER THE BURGLARY, HE SOLD THE VCR TO A PERSON AT A BAR LOCATED AT ANAHEIM AND CHERRY.
RT 231:16–232:17.

## VII

To establish a prima facie claim of ineffective assistance of counsel, the petitioner must demonstrate that his trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *James v. Borg,* 24 F.3d 20, 27–8 (9th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). The petitioner bears the burden of establishing both components. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Turk v. White,* 116 F.3d 1264, 1265–66 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998); *United States v. Quintero–Barraza,* 78 F.3d 1344, 1348 (9th Cir.1995), *cert. denied,* 519 U.S. 848, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg,* 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

In reviewing trial counsel's performance, the court will "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will the petitioner meet this initial burden. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2068; *Quintero–Barraza,* 78 F.3d at 1348.

If the petitioner makes this showing, he must then establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. *Lockhart,* 506 U.S. at 369, 113 S.Ct. at 842–43; *Quintero–Barraza,* 78 F.3d at 1348.

The petitioner asserts that his counsel was ineffective when she stated during closing argument that she was not contesting the four burglary counts unrelated to the burglary and murder of Mrs. Allen, but was only contesting that burglary and the murder:

> MAY IT PLEASE THE COURT, COUNSEL, LADIES AND GENTLEMEN OF THE JURY, I'M GOING TO START OFF MY ARGUMENT BY TELLING YOU STRAIGHT OUT THAT RONALD MCCLAIN, MY CLIENT, IS NOT IN THIS TRIAL BECAUSE HE IS CONTESTING THE BURGLARIES THAT ARE NOT CONNECTED WITH THIS MURDER. THAT'S NOT WHY HE'S HERE. HE IS IN THIS TRIAL BECAUSE HE IS CONTESTING THAT HE WAS A PART OF THE BURGLARY AND SUBSEQUENT MURDER OF ESTHER MAE ALLEN. THAT'S WHY HE'S HERE. AND I AM NOT GOING TO STRAIN CREDIBILITY OR COMMON SENSE BY ARGUING TO YOU THAT OF ALL OF THE COUNTS THAT ARE CHARGING MY CLIENT WITH BURGLARY THAT BY SOME MISHAPS—MISCHANCE OR BY SOME QUIRK THAT PRINTS WERE FOUND AND THAT HE HAD NOTHING TO DO WITH IT. I'M NOT GOING TO TELL YOU THAT BECAUSE I CAN'T. AND I'M [NOT] GOING TO CONDONE HIS ACTIONS IN THOSE BURGLARIES BECAUSE I CAN'T DO THAT EITHER. AND I'M NOT GOING TO TELL YOU THAT BURGLARY BECAUSE IT'S A LESSER CHARGE THAN MURDER IS

OKAY BECAUSE IT'S NOT. IT'S A VIOLATION OF SOMEBODY'S HOME AND OF THEIR PROPERTY AND OF THEIR SECURITY, AND I CAN'T CONDONE MY CLIENT'S ACTIONS IN COMMITTING THOSE BURGLARIES. [¶] BUT I WILL ARGUE TO YOU, LADIES AND GENTLEMEN, THAT GOING INTO SOMEBODY'S HOME WHEN THEY'RE NOT THERE AND TAKING PROPERTY OUT IS [SIC] AS TERRIBLE AS THAT IS, AND IT IS, IS AN ENTIRELY DIFFERENT MATTER THAN GOING INTO [THE] HOME OF AN ELDERLY LADY WHO IS ASLEEP AND BEATING HER TO DEATH. AND I WOULD SUBMIT TO YOU THAT THE EVIDENCE IN THIS TRIAL WHEN YOU TAKE A CLOSE LOOK AT IT, AND I WANT TO GO THROUGH THE DIFFERENT COUNTS; AND I WILL ARGUE TO YOU ON BEHALF OF MY CLIENT THAT THIS IS, NUMBER ONE, NOT A GROUP ACTIVITY IN TERMS OF MY CLIENT BEING WITH THE OTHER TWO DEFENDANTS, AND THAT THE EVIDENCE IS NOT CLEAR BEYOND A REASONABLE DOUBT THAT MY CLIENT, RONALD MCCLAIN, WAS EVER AT 248 OBISPO.

RT 293:1–294:6.

There is no merit to petitioner's claim that this closing argument constitutes ineffective assistance of counsel. Rather, petitioner's attorney made a tactical decision to challenge only the most serious charges against petitioner, thereby supporting petitioner's credibility. In similar circumstances, the federal courts have found that such an approach does not constitute ineffective assistance of counsel because, "[a]t worst[,] counsel's actions were only tactical decisions...." *United States, v. Bradford,* 528 F.2d 899, 900 (9th Cir.1975) (per curiam). In Bradford, counsel for one of the defendants admitted that the evidence identifying the defendants as the robbers was overwhelming and, instead, argued lack of willfulness and intent for the lesser offense of unarmed, rather than armed, bank robbery. *Id.* The Seventh Circuit has found that defense counsel's concession of his client's guilt of criminal confinement with a deadly weapon, one of two charges against the defendant, was not ineffective assistance of counsel because "[t]he lawyer was trying to enhance his credibility with the jury by conceding his client's guilt of the offense of which the evidence was overwhelming, and to focus his efforts on the weakest link in the state's case, the [other] charge that [defendant] had attempted to have sex with his victim...." *Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir.1991). In so holding, the appellate court cogently delineated the circumstances under which defense counsel's concession of a charged offense would be considered a reasonable tactical decision:

> [I]f in closing argument counsel acknowledges what the course of the trial has made undeniable—that on a particular count the evidence of guilt is overwhelming[, s]uch acknowledgment can be a sound tactic when the evidence is indeed overwhelming (and there is no reason to suppose any juror doubts this) and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury.

*Id.; See also United States v. Pledger,* 887 F.Supp. 1400, 1406–07 (D.Kan.1995) (holding defendant was not denied effective assistance of counsel when defense counsel, in light of the overwhelming evidence presented by the government and in order to establish credibility with the jury concerning defendant's arguments regarding the other counts of the indictment, "made a tactical decision to concede defendant's guilt [as to one count—possession of approximately 30 pounds of marijuana—of a four-count indictment]").

Here, the evidence of petitioner's guilt on the four burglary counts was overwhelming: The petitioner did not know any of the victims, and was never given permission by them to enter into their

homes; yet, his fingerprints were found inside each of the four residences, and petitioner could not provide any innocuous explanation for this circumstance. Moreover, no evidence was adduced suggesting that any person other than petitioner might be responsible for these burglaries.

The petitioner's counsel, therefore, reasonably decided to focus on the most serious charge—the murder of Mrs. Allen and the burglary of her home. To that end, counsel attempted to place the blame for the murder and the burglary of Mrs. Allen's home on co-defendant Jones, arguing that the burglary of Mrs. Allen's home was not similar to the other burglaries charged against petitioner but was similar to the other burglaries charged against Jones, which involved dragging one victim from her room and violently assaulting a victim with a hard object, and in which the homes were ransacked. RT 294:11–28, 295:1–296:3; *See also* RT 54:9–17, 60:17–64:4 (testimony of Kim Vo); RT 68:14–18, 69:14–70:3 (testimony of Jim Sciurba); RT 79:12–80:7 (testimony of Maria Tarino). Moreover, defense counsel argued that there was no physical evidence linking petitioner to the murder scene. RT 296:4–297:19.

Under these circumstances, petitioner's trial counsel made a reasonable tactical decision to concede petitioner's guilt as to the four burglary counts in an effort to establish credibility with the jury to contest the more serious murder charge, and her decision to do so does not constitute ineffective assistance of counsel. *Bradford*, 528 F.2d at 900; *Underwood*, 939 F.2d at 474; *Pledger*, 887 F.Supp. at 1406–07; *See also United States v. Swanson*, 943 F.2d 1070, 1075–76 (9th Cir.1991) ("We recognize that in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges."). Thus, the denial of this claim by the California Supreme Court was neither contrary to, nor an unreasonable application of federal law under 28 U.S.C. § 2254(d).

## VIII

The petitioner now seeks leave to amend his habeas corpus petition to add a claim that his appellate counsel was ineffective when he filed a Wende brief. This motion must be denied since such an amendment would not "relate back" to the pending application and, under the AEDPA, would be untimely.

 A petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Fed.R.Civ.P. 15(c)(2), "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Here, the pending petition, which is the original pleading, alleges solely constitutional errors occurring during petitioner's trial. On the other hand, the proposed amendment alleges a constitutional error occurring on appeal. The proposed amendment does not arise out of the conduct set forth in the pending petition and, thus, does not relate back to the original petition. *See, e.g., Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 979–980 (9th Cir.1988) (amended complaint did not relate back to original complaint where amended complaint alleged injuries "subsequent to, and independent of, the events on which [plaintiff] based his original ... claim"); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999) (amendment to habeas corpus petition claiming ineffective assistance of trial counsel for not filing an appeal did not relate back to original petition claiming ineffective assistance of trial counsel at trial and in sentencing).

Since the proposed amendment does not relate back to the original petition, it must, on its own, be timely. Under the AEDPA, there is a one year statute of limitations for the filing of federal petitions for a writ of habeas corpus by state prisoners. 28 U.S.C. § 2244(d). The limitation period

runs from the latest of either the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *Id.*

 Here, the petitioner's convictions became final in mid–1992, after petitioner's appeal was denied by the California Court of Appeal and petitioner did not seek review in the California Supreme Court. *See* Cal.Rules of Court, Rules 24 and 28. However, for a state prisoner whose conviction became final before the enactment of the AEDPA, the AEDPA's one-year statute of limitations does not begin to run until April 24, 1996. *Calderon v. United States District Court,* 128 F.3d 1283, 1287 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 and —— U.S. ——, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998), *overruled in part on other grounds by, Calderon v. United States District Court,* 163 F.3d 530 (9th Cir.1998) (en banc), *cert. denied,* —— U.S. ——, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999). Thus, petitioner had one year from that date, or until April 23, 1997, to file a federal habeas corpus petition. Although the instant application was filed before that date, the pending request to amend the habeas corpus petition was not filed until after that date; consequently, the amendment proposed by petitioner is untimely.[12]

Since the proposed amendment is time-barred under the AEDPA, it would be futile to allow petitioner to amend his habeas corpus petition, and petitioner's request is denied. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995) *cert. denied,* 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 and 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996).

12. The running of the one-year statute of limitations is tolled for the time during which a properly filed application for post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). Since the California Supreme Court treated petitioner's request to raise a new claim as a second habeas

**RECOMMENDATION**

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; (3) denying petitioner's request to amend his habeas corpus petition; and (4) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

April 27, 1999.

corpus petition, and denied it, this Court will toll the statute of limitations for the period that petition was pending, or 178 days; however, when added to April 23, 1997, the 178 days merely extends the filing deadline to October 18, 1997. Yet, the amendment was not requested by that date.